No. 39,590

In the Matter of the Petition of the CITY OF OTTAWA, FRANKLIN COUNTY, KANSAS, for Enlargement of the Boundaries of the City of Ottawa, Kansas, *Appellant* and *Cross-Appellee,* v. HARLEY GOFF, et al. (Protestants), *Appellees* and *Cross-Appellants.*

(279 P. 2d 293)

Opinion filed January 22, 1955.

*Douglas Gleason,* city attorney, of Ottawa, and *Thomas E. Gleason,* of Ottawa, argued the cause, and were on the briefs for the appellant and cross-appellee.

*Basil W. Kelsey,* of Ottawa, argued the cause, and was on the briefs for the appellees and cross-appellants.

The opinion of the court was delivered by

WERTZ, J.: This was a proceeding brought by the City of Ottawa to annex certain unplatted territory to the city. From the judgment rendered by the trial court in favor of the protestants and against the city, the city appeals and defendants cross-appeal. The appellant will be hereinafter referred to as the City, and cross appellants as protestants.

The facts in the case and the questions involved in this appeal may be best stated by abstracting and quoting from the findings of fact and conclusions of law made by the trial court. The City of Ottawa, a second class city, under authority of G. S. 1949, 12-501 *et seq.,* filed its petition with the board of county commissioners of Franklin County asking for the annexation of two parcels of real estate. Parcel No. 1, lying south of the present city limits, contained 56.34 acres in 39 tracts, the largest tract being 6.05 acres. Parcel No. 2, lying north of the present city limits, contained 38.24 acres in seven tracts, the largest tract being 18.54 acres. Both parcels

of real estate were unplatted territory. Written protests to the petition were filed by the owners of 28 of the 39 tracts totaling 39.63 acres in parcel No. 1, and by the owners of five of the seven tracts totaling 18.16 acres in parcel No. 2. A hearing was had before the board of county commissioners and after considering the evidence, the board approved the annexation of both territories. From that order, protestants appealed to the district court.

"IV

"Said petition, notice and order described Parcel 2 as 'commencing at a point 1419.1 feet south and 50 feet east of the *northeast* corner of Sec. 25, Twp. 16, Range 19,' which would apparently be a point in the northwest quarter of Sec. 30, Twp. 16, Range 20. Other provisions in the description, and especially the last part thereof, indicate that the beginning point intended was 1419.1 feet south and 50 feet east of the northwest corner of Section 25, rather than the northeast corner of said section. Furthermore, the petition, notice and order further describe the beginning point as follows: 'the same being the point of intersection of the east line of Main Street, City of Ottawa, Kansas, with the north line of Junction Avenue, City of Ottawa, Kansas, produced', from which point said boundary line of Parcel 2 is said to run 50 feet to the west line of Section 25. The area intended is sufficiently described, and the protestants owning property in Parcel 2 having appeared at the hearing pursuant to said notice, they do not appear to have been misled by any error in the description.

"V

"Parcels 1 and 2 contain no real estate now devoted to agricultural purposes, but said parcels have been developed in small tracts for purposes of an urban nature, including some residences but consisting principally of properties used for business and industrial purposes. Such uses include a retail lumber outlet, small factories, grocery stores, restaurants, two motels, a garage, service stations, a National Guard armory, a saw mill, a locker plant, a slaughter house and various other business establishments, and some railroad properties. The value of said properties is enhanced because of proximity to the city of Ottawa and the highway routes leading into and through said city. The city of Ottawa is capable of extending to said properties its various municipal services, including street maintenance, supplies of water and electricity, sewer systems, sewage disposal, police and fire protection, and health and sanitary regulations.

"VI

"The inclusion of Parcels 1 and 2 within the corporate limits of Ottawa will impose new and additional burdens upon the property owners in said areas. Certain businesses in said parcels derive part of their incomes from the patronage of drivers of liquid fuel transports who stop for rest, refreshment and other purposes. This business would be lost to said enterprises because of an ordinance of the city of Ottawa which prohibits any person from keeping or permit-

ting to stand on private property any vehicle used for the transport of inflammable fuels, having a capacity of more than 600 gallons. In other respects the annexation of said parcels will limit and restrict the use of property therein by reason of the ordinances and regulations of the city relating to matters of construction, zoning, police, fire and sanitation; and said areas will also be subjected to heavier taxation than at present because of the regular city tax levies. In return for these added burdens and restrictions, said areas and property therein will be benefited by better provisions for the care and use of the streets and the improved police, fire and health protection provided by the city.

### "VII

"In 1946, two township sewer districts were organized in the territory adjoining the city of Ottawa on the south, being Harrison Township Sewer District No. 1 and Lincoln Township Sewer District No. 1, the territory of these districts including all of Parcel 1 except six small tracts. On September 4, 1946, said sewer districts and the city of Ottawa entered into a written contract whereby, in consideration of $10,600 to be paid by said sewer districts, the city agreed to permit perpetually said sewer districts to dispose of their sewage through the city's main sewers and disposal plant. That in reliance on said contract, said sewer districts issued bonds to provide said sum of money and did, on November 3, 1946, pay said sum of $10,600 to the city in full payment of the amount due on said contract. That since that time, said sewer districts have discharged their sewage into the city's main sewer system, and the same has been received by the city and disposed of by it through the city's disposal plant without other payment for such service than said sum of $10,600.

### "VIII

"To retire the bonds issued by said sewer districts to provide the $10,600 required to pay the city for sewage disposal in accordance with the contract of September 4, 1946, said sewer districts have annually, since 1948, levied a tax on the property in said districts, the full amount to this time being $6,566.81. After the retirement of said bonds, said property will not be subject to any further levy for sewage disposal, the cost of such service as provided in said contract having been paid in full.

"During the same period the city has annually levied taxes upon the property of said city to pay the cost of sewage disposal. These city levies, if applied to the valuations of said sewer districts, will produce from the property in said sewer districts an amount approximately 50% greater than such property now pays for the retirement of the districts' sewage disposal bonds. If the territory of said districts is annexed to the city, it will continuously be subject to the city levies for sewage disposal, notwithstanding that said districts have already paid the contract price in full for such service."

### "CONCLUSIONS OF LAW

### "I

"The erroneous starting point mentioned in the description of Parcel 2 as shown by the petition, notice and order of the Board of County Commis-

sioners, is overcome by the further correct recitals of said description as set out in said petition, notice and order, and the same does not render said proceedings void as to Parcel 2.

"II

"The additional burdens and restrictions to which the property in Parcels 1 and 2 will be subjected by reason of the ordinances and regulations of the city of Ottawa after annexation, do not constitute manifest injury and are insufficient to prevent the annexation of said parcels.

"III

"The effect of the annexation of Parcel 1 will be to impair the obligation of the contract entered into on September 4, 1946 between the city of Ottawa and Harrison Township Sewer District No. 1 and Lincoln Township Sewer District No. 1, and constitutes manifest injury to the owners of property in that part of Parcel 1 which is within the limits of said sewer districts.

"IV

"Both Parcel 1 and Parcel 2 being in excess of twenty acres each in area, the city of Ottawa is without power to annex the same over the protests of the owners of property therein, and the order of the Board of County Commissioners approving said annexation, made on February 20, 1953, is contrary to law.

"V

"Judgment should be rendered for the protestants both as to Parcels 1 and 2, and the costs of this action should be taxed to the city of Ottawa."

The first question presented involves the trial court's conclusion of law IV, whether a city of the second class under authority of G. S. 1949, 12-501 *et seq.*, may annex an unplatted territory containing more than twenty acres, in which there is no individual tract or single ownership containing over twenty acres, against the combined protests of the owners of the individual tracts constituting more than twenty acres, or against the combined protests of the owners of individual tracts of less than twenty acres.

Section 12-501 provides, in substance, that when any city desires to enlarge its limits, the city shall present a petition to the board of county commissioners setting forth in metes and bounds the territory sought to be added, asking the board of county commissioners to make a finding as to the advisability of adding such territory to the city.

Section 12-502 provides for notice of time and place of hearing, description of the property sought to be added, the names of the *owners* thereof and provisions for publication. The commissioners shall hear testimony as to the advisability of making the addition and, if satisfied that the adding of *such territory* would be to the

city's interest and will cause no manifest injury to the *persons* owning real estate in the *territory* sought to be added, they shall so find, and the governing body may enlarge the limitation thereof to include such *territory*. This section contains two provisos not pertinent hereto and concludes with the following:

"*And further provided,* No unplatted territory of over twenty (20) acres shall be taken into said city against the protest of the *owner* thereof, . . ." (Our italic.)

It is clear, as evidenced by the mentioned statute and its historical background, that the annexation by cities of lands adjacent to their corporate limits is favored in the eyes of the legislature within the restrictions and exceptions which they specifically declare. The growth of cities is inevitable, and this court is not disposed to place a construction on the statutes which would be inconsistent with the manifest intent of the legislature, or repugnant to the meaning of the act in question.

Section 12-502 begins with the words "Notice of the time and place of said hearing, together with a description of the *property* sought to be added . . ., and the *names* of the *owners* thereof," and speaks of manifest injury to the "*persons* owning real estate in the *territory* sought to be *added*. . . ." (Italics supplied.) It is clear that the legislature is speaking of territory without regard to size, and uses the word "owners" contemplating more than one owner of such territory, and that the territory might consist of many small tracts owned by many owners. The proviso refers to *owner* in the singular, and says no unplatted territory of over twenty acres shall be taken into the city against the protest of the *owner* thereof. It would appear the legislature had in mind that cities might annex unplatted territory adjacent to the city which had been developed by small businesses and also small tracts owned by many individuals, without regard to the number of acres contained in that territory. However, it was mindful that this was an agricultural state and it chose to curb the power granted to municipal corporations in annexing territory under the mentioned section, by providing a limitation on the size of a tract under one ownership which might be annexed over the protest of such owner. Inasmuch as the record disclosed there was no owner of a single tract of over twenty acres in either parcel sought to be annexed, protesting, the first question presented must be answered in the affirmative, and the city's con-

tention that the trial court was in error in its conclusion of law No. IV was well taken.

It was next contended by the city that the court erred in its conclusion of law No. III, based on its findings of fact Nos. VII and VIII.

It is noted that neither sewage district is made a party to this action. However, assuming but not admitting that protestants are third party beneficiaries under the contract between the city and sewage districts, their rights are governed by the statutes presently to be discussed.

The protestants contended that in the year 1946, sewage districts were organized under G. S. 1949, 80-2001 *et seq.*, which districts later entered into a contract with the city for the disposal of sewage pursuant to section 80-2010. The substance of that contract was that the districts could dispose of their sewage through a connection with the city for which they paid $10,600. The consideration for this contract was raised by the issuance of revenue bonds, and the annexation proceedings impaired the obligation of the sewage districts' contract with the city. The city contended the mentioned contract was entered into pursuant to section 80-2010 and was also governed by the provisions of section 80-2022, and that these two sections operated together in the furtherance of equitable principles. The city's argument is well taken.

G. S. 1949, art. 20, ch. 80, is an act relating to sewers in townships, authorizing and creating sewage districts in townships having a public water supply, authorizing the construction and maintenance of sewers and sewage disposal plants therein, providing for the condemnation of necessary land therefor, for the issuance of bonds and the levy of taxes and special assessments by such districts, prescribing the powers and duties of such districts in matters relating thereto, and was enacted by Laws 1941, ch. 399. The entire act consists of 23 sections. Section 80-2010 provides, in part, as follows:

". . . The governing body of such sewage district may enter into contracts with cities or adjoining townships within or without the state for the disposal of all or a part of the sewage of such district, and may contract to pay such price as may be agreed upon, upon a monthly or yearly basis or in a lump sum, for the disposal of such sewage."

Section 80-2022 provides, in part:

"If any part of the territory on which a sewer system is located, is taken into any city during the time *any* bonds of such sewage district are outstanding,

the city shall thereby become liable for the payment of a proportionate part of such bonds, . . ." (Italic supplied.)

It is apparent from reading the act that our legislature was aware of the fact certain territory in townships adjacent to the cities must be provided with a means of disposing of their sewage; that the areas which would require the organization of such sewage districts would probably be composed of suburban areas which represent the natural growth of cities, and that such territory would some day become a part of such city by annexation. Consequently, it permitted such districts, by section 80-2010, to contract with the city for sewage disposal, and make provision by section 80-2022 that in the event the city should annex such territory, the city would assume any outstanding bond issues of such sewage district or districts. When the sewage districts entered into the contract with the city under section 80-2010, they did so with notice of the provisions of section 80-2022. The latter section being a part of the entire act, the city and township could not enter into a binding contract against its provisions, and consequently protestants cannot now be heard to say their contract rights have been invaded or that the statutes have been violated. It may be said that section 80-2022 places a limitation on the terms of the contract that might be entered into under section 80-2010. The trial court erred in holding that the annexation proceedings impaired the obligation of the mentioned contract.

The protestants by way of cross-appeal contended the court erred in its conclusion of law No. II, and maintained that certain ordinances would restrict certain business enterprises within the territory after its annexation. The question concerning zoning of real estate and the regulation of traffic and parking, in the interests of health, safety and welfare of a municipality are legislative matters. It is sufficient here to point out that if in the future the administration of the ordinances some conjectured but not yet existent oppression may arise, that situation may be judicially dealt with in due course. (*Ware v. City of Wichita,* 113 Kan. 153, 214 Pac. 99.) The trial court's findings of fact Nos. V and VI and its conclusion of law No. II are approved.

Protestants also contended the trial court erred in its conclusion of law No. I. This involved a discrepancy in the metes and bounds description of one of the parcels. However, this discrepancy was followed by a correct description. The area sought to be annexed

being sufficiently described and the protestants having appeared at the hearing pursuant to the notice, they were not misled by such discrepancy, and the trial court's finding of fact No. IV and its conclusion of law No. I based thereon are approved.

In view of what has been said, it follows that the trial court's conclusions of law Nos. I and II are approved, and Nos. III, IV and V are set aside and the case remanded to the trial court with instructions to enter judgment annexing the territory in accordance with the views herein expressed. As to the city's appeal the case is reversed, and as to the protestants' cross-appeal the case is affirmed.

It is so ordered.

ROBB, J., not participating.